IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXANDER A. WILLIAMS, )<br> ID # 19042243, )<br> Plaintiff, )<br> )<br>vs. )<br> )<br>DALLAS POLICE OFFICER, et al., )<br> Defendants. ) | No. 3:19-CV-3046-B-BH |

### MEMORANDUM OPINION AND ORDER

Before the Court is the *pro se* prisoner plaintiff's complaint, received on December 20, 2019 (doc. 3). Based on the relevant filings and applicable law, the complaint is **DISMISSED** with prejudice.

### I. BACKGROUND

On December 20, 2019, Alexander A. Williams (Plaintiff), a former inmate in the Dallas County Jail,[1] sued Dallas County (County), the Irving Police Department (Police Department), Hometown Suites,[2] Best Western hotel (Best Western), Super 8 hotel (Super 8), the Irving Animal Shelter[3] (Animal Shelter), and Dallas Police Officer Bradon Byrd (Officer), based on events that

---

[1] Plaintiff does not appear to be currently incarcerated in the Dallas County Jail.  *See https://www.dallascounty.org/jaillookup/searchByName* (last visited Sept. 30, 2021).

[2] Based on the address Plaintiff provided for defendant "Hometown Suites," the correct name of the hotel appears to be HomeTowne Studios.  Alternatively, Plaintiff may have intended to file suit against Homewood Suites, which is also a hotel with locations in Dallas, Texas.  For purposes of this action, this defendant will be referred to throughout as "Hometown."

[3] In his filings, Plaintiff referred to this defendant interchangeably as Irving Animal Pound, Irving Animal Shelter, and the Irving City dog pound.  (*See* doc. 3 at 3-4; doc. 16.)  Based on the address provided by Plaintiff for this defendant, the correct name of the party appears to be Irving Animal Services.  (*See* doc. 16.)  The Court assumes Irving Animal Services is the party that Plaintiff seeks to sue in connection with his dog.

1

occurred on August 8, 2018, in October 2018, on January 4, 2019, and on June 5, 2019. (*See* doc. 3 at 3-6; doc. 19 at 2.)[4] A Magistrate Judge's Questionnaire (MJQ) was sent to him on February 3, 2020, to which he filed several responses and letters providing additional details about his claims against the defendants. (*See* docs. 7, 14, 16-19.)

In his filings, Plaintiff appeared to claim that, on August 8, 2018, Police Department made a false report, and failed to secure his room at Hometown after conducting a search, which resulted in two other individuals entering his room and taking his expensive items and car. (*See* doc. 3 at 3-5; doc. 14 at 4.) He claimed that Hometown knew and failed to report that the two individuals broke into his room and took his items, and that it knew one of the individuals was lying when she said Plaintiff had given permission for her to enter the room. (*See* doc. 3 at 3-5; doc. 14 at 5; doc. 17 at 4.) Also on August 8, 2018, Plaintiff claimed that Animal Shelter euthanized his dog before the adoption period expired and Plaintiff could pick him up. (*See* doc. 3 at 3-6.) In October 2018, Plaintiff claimed Best Western did not allow him to retrieve paperwork for two extra days to recover his car from an impound lot, after which point, he no longer had the money to recover the car. (*See* doc. 3 at 3-4; doc. 14 at 7-8; doc. 17 at 6.) He claimed Police Department violated his Fourth Amendment rights by telling him he could not return to his room at Best Western. (*See* doc. 14 at 4; doc. 17 at 3.)

According to Plaintiff, on January 4, 2019, he was falsely arrested by officers of Police Department at either Super 8 or Best Western.[5] (*See* doc. 14 at 4; doc. 17 at 2.) In connection with

---

[4]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[5] In his February 19, 2020 responses to the MJQ, Plaintiff stated for the first time that he was arrested at Best Western on January 4, 2019, rather than Super 8 as in prior filings. (*See* doc. 17 at 2.) In the same filing, he also appeared to

this arrest, Police Department, through its officers, violated Plaintiff's Fourth Amendment rights, falsely imprisoned him, made false claims, and racially profiled him. (*See* doc. 3 at 3; doc. 14 at 4; doc. 17 at 2-3.) Plaintiff also claimed that Super 8 ignored his claims about being robbed and assaulted on January 4, 2019, did not allow him to place a complaint with them, and threw away his belongings before the expiration of 30 days. (*See* doc. 3 at 3-4; doc. 14 at 9; doc. 17 at 8.)

During an arrest in an Enterprise Car Rental (Enterprise) parking lot on June 5, 2019, Plaintiff claimed that he was assaulted by Officer, who engaged in police brutality, used excessive force, and violated his equal protection rights by not having a body camera or audio. (*See* doc. 3 at 3-6; doc. 14 at 11; doc. 17 at 10.) Additionally, he claimed that County is providing immunity to Officer for the assault. (*See* doc. 3 at 3.) Plaintiff did not provide specific dates for his allegations against County, but he additionally claimed that County was deliberately indifferent to his medical needs because it was aware of his various medical conditions, yet it: (1) placed him in pods with dangerous inmates and in the general population instead of the infirmary; (2) placed him in a holding cell with a concrete bench to sleep on; (3) provided his prescribed sinus medication for a month and then allowed it to expire, resulting in loud snoring that caused complaints from other inmates; and (4) did not protect him from fights, other injuries, and conditions that worsened his medical conditions. (*See* doc. 14 at 2; doc. 17 at 1; doc. 19 at 1.) No process has been issued in this case.

## II. PRELIMINARY SCREENING

When Plaintiff filed this action, he was a prisoner in the Dallas County Jail, and was permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of

---

claim the arrest occurred at Super 8. (*See id.* at 2-3.)

a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983 for alleged violations of his rights in connection with his arrests between August 8, 2018, and June 5, 2019, related events that took place after his arrests, and conditions of his confinement. That statute "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred

4

under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.    County**

Municipalities, including counties and cities, may be liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar 2, 2006) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making

5

>authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to "'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citation omitted); *see also id.* at 580 (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights).") (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *accord Piotrowski*, 237 F.3d 579-80. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation and internal quotation marks omitted). In addition, a single incident is insufficient to demonstrate an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581.

Here, Plaintiff alleged that County was deliberately indifferent to his known medical needs relating to a hernia and prescription sinus medication, and also contended that County failed to protect him from conditions that would worsen his medical conditions. He further complained that County was giving Officer immunity for the alleged June 5, 2019 assault. He does not, however,

6

allege or identify any policy statement, ordinance, regulation, or decision regarding medical care, inmate altercations, or officer immunity that was officially adopted and promulgated by County's lawmaking officers, or by an official to whom the lawmakers have delegated policy-making authority. Nor does he allege any persistent or widespread practice which caused him injury, relying instead only on the events and treatment he received in this single case. A single instance does not establish a municipal policy or custom, nor does it permit the inference of such. *See, e.g.*, *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (affirming no § 1983 liability for county where the alleged policy or custom arose solely from the treatment of the deceased prisoner); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy" for municipal § 1983 liability).

Accordingly, Plaintiff has failed to state a viable § 1983 claim against County, and his claims against County are dismissed.

**B.      Non-Jural Entities**

Plaintiff alleges claims against Police Department and Animal Shelter. A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir.1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. A city police department is not a jural entity subject to suit. *See, e.g., Williams v. City of Dallas Police Dep't*, No. 3-09-CV-0275-P, 2009 WL 812239, at *2 (N.D. Tex. Mar. 26, 2009); *Edwards v. Dallas Cnty. Jail Med. Dep't*, No.

7

3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sept. 13, 2007). Further, Animal Shelter is merely a city-operated division of the City of Irving, and as such, is not a jural entity subject to suit. *See, e.g., Davis v. Hager*, No. 17-10118, 2018 WL 3642007, at *4 (E.D. La. Aug. 1, 2018) (finding that Jefferson Parish Animal Shelter was merely a department of Jefferson Parish and therefore not a jural entity for § 1983 claim); *see also* Irving, Tex., Code of Ordinances, No. 2021-10468, Art. 1, Sec. 6-1 (July 22, 2021).

Accordingly, because Police Department and Animal Shelter are non-jural entities, and Plaintiff has neither alleged nor shown that Police Department and Animal Shelter have been granted the capacity to engage in litigation on their own, Plaintiff's claims against them are dismissed.

C.  **Non-State Actors**

Plaintiff also alleges claims against Super 8, Hometown, and Best Western based on their respective actions or inactions following the events of August 8, 2018, and January 4, 2019. To the extent he asserts such claims under § 1983, § 1983 can be applied only to individuals who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia[.]" 42 U.S.C. § 1983. Generally, then, a suit under § 1983 cannot be brought against a private entity acting in its private capacity. A non-state, or private, actor can, however, be held liable under a § 1983 cause of action if the actor engaged in "a conspiracy with state actors to violate [the plaintiff's] constitutional rights." *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008).

Here, Super 8, Hometown, and Best Western are private parties that are not typically subject to liability under § 1983. Plaintiff did not allege that Super 8, Hometown, or Best Western were acting under color of state law, and his factual allegations do not demonstrate that they acted in

other than their respective private capacities. Nor did Plaintiff allege the existence of a conspiracy between Super 8, Hometown, or Best Western and any state actors. Accordingly, he has failed to state a claim under § 1983 against these private entities, and the claims against Super 8, Hometown, and Best Western are dismissed.

### D.     Officer

Plaintiff claims that, during an arrest at an Enterprise parking lot on June 5, 2019, he was assaulted by Officer, who engaged in police brutality, used excessive force, and violated his equal protection rights by not having a body camera or audio. Plaintiff did not specify whether his claims are brought against Officer in his official or individual capacity.

#### 1.     Official Capacity

To the extent Plaintiff sues Officer in his official capacity, such a claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's claims against Officer in his official capacity is a claim against County. As with his deliberate indifference claims against County, Plaintiff has failed to allege or identify any policy statement, ordinance, regulation, or decision regarding police brutality or excessive use of force that was officially adopted and promulgated by County's lawmaking officers, or by an official to whom the lawmakers have delegated policy-making authority. Nor does he allege any persistent or widespread practice which caused him injury, relying instead only on the events and treatment he received in this single case. Because Plaintiff has not demonstrated that County is liable under a theory of *respondeat superior* for Officer's actions, his claims against Officer in his official capacity are dismissed.

9

### 2.     Individual Capacity

To the extent Plaintiff sues Officer in his individual capacity for excessive force, or police brutality, in connection with the alleged assault during his June 5, 2019 arrest, the Fourth Amendment protects individuals from excessive force during an arrest or other seizure. *See Graham v. Conner,* 490 U.S. 386, 395 (1989). To prevail on a claim of excessive force, a plaintiff must demonstrate that the use of force was not "applied in a good faith effort to maintain or restore discipline," but instead was used "maliciously and sadistically" to cause harm. *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)).

Here, Plaintiff stated that he "ran on" Officer, who chased him into an Enterprise parking lot, and "punched and neck choked me to the ground by my shirt collar." (doc. 3 at 4; doc. 14 at 11; doc. 17 at 10.)  By Plaintiff's own admissions, he was running away from Officer when Officer chased him and took the challenged actions to apprehend him. (*See id.*)  Plaintiff does not allege that Officer took any actions once Officer caught up to Plaintiff and apprehended him.  He has not alleged facts sufficient to show that Officer's actions were not "applied in a good faith effort to maintain or restore discipline," and were instead taken "maliciously and sadistically" to cause harm. *Hudson*, 503 U.S. at 6.  Accordingly, Plaintiff has failed to state a claim for excessive force upon which relief may be granted against Officer.

Plaintiff's claim that Officer violated his equal protection rights also fails.  In order to "state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class[,]' . . . or (b) he has been 'intentionally treated differently from others similarly situated and that there is no

10

rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012). Here, Plaintiff alleges only that Officer violated his equal protection rights by not wearing a body camera or audio. Plaintiff has alleged neither that Officer discriminated against him based on his membership in any protected class, nor that he was treated differently from any similarly situated individuals and that there was no rational basis for such treatment. He therefore has not stated a claim against Officer for violation of his equal protection rights.

Because Plaintiff has failed to state a claim upon which relief may be granted against Officer in his individual capacity, his claims are dismissed.[6]

## IV. CONCLUSION

The *pro se* prisoner plaintiff's complaint, received on December 20, 2019 (doc. 3), is **DISMISSED** with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as frivolous and for failure to state a claim. This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).

**SIGNED this 5th day of October, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[6] To the extent Plaintiff's complaint can be liberally construed to allege state causes of action against Officer, he has not shown that complete diversity of citizenship exists between the parties to establish original jurisdiction over such claims in this Court. *See* 28 U.S.C. § 1332(a). The Court declines to exercise supplemental jurisdiction over any state law claims raised by Plaintiff. *See* 28 U.S.C. § 1367(c)(3). Such claims, if any, are dismissed without prejudice for lack of jurisdiction.

11